**In re Edward S. JARMUL and Eileen G. Jarmul, Debtors.**

**Russell McMILLEN, Plaintiff,**

v.

**Edward S. JARMUL and Eileen G. Jarmul, Defendants.**

**Bankruptcy No. 92–01597–BM. Adv. No. 92–00319–BM.**

United States Bankruptcy Court, W.D. Pennsylvania.

Jan. 29, 1993.

Michael J. Pawk, Lindsay & Lutz, P.C., Butler, PA, for plaintiff/Russell McMillen.

Edward S. and Eileen G. Jarmul, pro se.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Plaintiff Russell McMillen seeks a determination that a debt purportedly owed to him by debtors is not dischargeable pursuant to 11 U.S.C. section 523(a)(2)(A).[1]

## I

## FACTS

Plaintiff is a general contractor and is in the business of constructing houses.

On April 1, 1990, plaintiff and debtor Edward Jarmul ("Mr. Jarmul") executed an agreement whereby plaintiff was to erect a pre-fabricated building which debtors intended to use as their personal residence. The total contract price was $66,528.00. The pre-fabricated materials to be used by plaintiff were provided by Deck House, Inc. Debtor Eileen Jarmul ("Mrs. Jarmul") was not a signatory to the agreement.

Both debtors, plaintiff, and Landmark Savings Association ("Landmark") executed a construction loan agreement on May 22, 1990. Landmark agreed to lend debtors $124,000.00 to finance the project. Plaintiff was to be paid by Landmark in four (4) installments (or "draws") upon certification that the work for which payment was sought had been completed. The first draw was in the amount of $9,979.00. The second and third draws, respectively, were in the amount of $19,958.00 each. The fourth draw was in the amount of $16,633.00. The balance remaining after plaintiff had been paid was to be used to pay Deck House for the materials it supplied.

Plaintiff began working on the project shortly thereafter. When work on the project began to lag behind schedule, plaintiff and Mr. Jarmul orally agreed late in July of 1990 that plaintiff would complete only the structure and the exterior for $41,362.00 and that Mr. Jarmul personally would complete the interior of the building.

Plaintiff is a customer of W.T. Leggett Company ("Leggett"), a wholesale distributor of kitchens and bathrooms that does business only with contractors. Mr. Jarmul represented to Leggett that he had been sent by plaintiff and ordered materials from it costing $5,703.20 for use in completing the interior of the house. Mr. Jarmul charged the materials to plaintiff's account with Leggett without plaintiff's permission.

Plaintiff also is a customer of Wallman Supply Company ("Wallman"). Mr. Jarmul represented to Wallman that he had been sent by plaintiff and ordered electrical supplies from it costing $787.00 for use in completing the interior of the house. Mr. Jarmul charged the materials to plaintiff's account with Wallman without plaintiff's permission.

Mr. Jarmul has not paid either Leggett or Wallman for the materials he purchased from them.

On August 9, 1990, Landmark inspected the project and certified that all work required for payment of the first draw had been completed and authorized payment of $9,979.00 to plaintiff. A check in that amount payable to plaintiff was issued on September 4, 1990. Plaintiff negotiated the check shortly thereafter.

Work on the project continued to lag behind schedule. On October 15, 1990, Mr. Jarmul informed plaintiff that he intended to get another contractor to complete the job. It was agreed at that time that plaintiff would be paid $30,000.00 for work he had performed less the cost to have the roof and siding installed by another contractor. It further was agreed that plain-

---

1. Although the complaint asserts that the action is brought pursuant to 11 U.S.C. section 727(a)(4), careful review of the complaint in its entirety suggests that plaintiff in fact seeks a determination that the debt in question is not dischargeable pursuant to 11 U.S.C. section 523(a)(2)(A). Counsel to plaintiff stated in response to a query from the court that plaintiff sought a determination that the debt in question was not dischargeable pursuant to section 523(a)(2)(A). Debtors did not object to plaintiff's characterization. Accordingly, the present action will be analyzed in accordance with the requirements of 11 U.S.C. section 523(a)(2)(A). Had the court reviewed this matter in accordance with the requirements of 11 U.S.C. section 727, the result would not be changed.

tiff would receive the second draw from Landmark and would remit the balance to Mr. Jarmul after plaintiff had been paid for work performed to that point.

When Mr. Jarmul was unable to find another contractor to complete the roof on such short notice, plaintiff and Mr. Jarmul agreed on October 18, 1990 that plaintiff would install the roof and was to be paid $30,000.00 for work performed less the cost to have the siding installed by another contractor. Plaintiff began to install the roof the next day and finished on November 9, 1990.

Mr. Jarmul made arrangements late in October of 1990 to have Hank Kenyon do the siding and other work on the project. Kenyon began working on November 1, 1990.

On November 19, 1990, Mr. Jarmul once again notified plaintiff that he was terminating plaintiff as general contractor. Mr. Jarmul also notified Landmark that all future draws for work on the project were to be made jointly to Mr. Jarmul and to Kenyon.

Landmark inspected the project on November 19, 1990 and certified that all work required for payment of the second draw had been completed and authorized payment. On November 30, 1990, Landmark issued a check payable to Mr. Jarmul and to Mr. Kenyon in the amount of $19,958.00. Plaintiff was not listed as a payee and received nothing from the second draw. Mr. Jarmul paid Kenyon $5,000.00 from the draw and retained the balance of $14,-958.00, ostensibly to complete the interior portion of the dwelling which the parties agreed was no longer the obligation of plaintiff.

Plaintiff received nothing from the third or fourth draws. Kenyon received a portion of these draws while the balance was retained by plaintiff.

Debtors filed a voluntary joint chapter 7 petition on April 14, 1992. Schedule D, Creditors Holding Secured Claims, lists plaintiff and Leggett as holding statutory liens in the amount of $18,500.00 and $5,803.00 respectively.

On July 17, 1992, plaintiff commenced the adversary action which is before the court at this time. Trial on the matter was held on January 6, 1993, at which time both sides were permitted to offer any evidence they considered appropriate.

No evidence was offered relating to the propriety of the above-mentioned statutory liens. Accordingly, the court has no basis for determining their legal existence and whether they survive debtors' discharge.

## II

### ANALYSIS

Plaintiff asserts that debtors "committed fraud" in two respects. According to plaintiff, debtors fraudulently misrepresented to him when he was rehired on October. 18, 1990 that he would be paid for his services when in fact they had no intention at the time of ever paying him. In addition, plaintiff maintains that debtors "committed fraud" in charging materials purchased from Leggett and Wallman to plaintiff's accounts when they did not have his permission to do so.

Section 523(a)(2)(A) provides in pertinent part as follows:

(a) A discharge under section 727 ... of this title does not discharge any individual from any debt—

(2) for money, property, services, or an extension renewal or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ...

11 U.S.C. § 523.

■ In order for the debts at issue here to be nondischargeable plaintiff must establish that:

(1) debtors obtained money, property, services, or credit from plaintiff through a material misrepresentation;

(2) debtors knew, at that time, that the representation was false or was made with gross recklessness as to its truth;

(3) debtors intended to deceive plaintiff;

(4) plaintiff reasonably relied on the false representation; and

(5) plaintiff suffered damages as a proximate result of the materially false representation.

*See P & W Foreign Car Service, Inc. v. Edwards (In re Edwards)*, 143 B.R. 51, 54 (Bankr W.D.Pa.1992).

■ The standard of proof for determining whether a particular debt is nondischargeable pursuant to section 523(a)(2)(A) is the preponderance of the evidence standard. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

*A) The Agreement Of October 18, 1990.*

■ The assertion that the debt arising out of the oral agreement of October 18, 1990 to pay plaintiff $30,000.00 less the cost of having another contractor install the siding is nondischargeable pursuant to section 523(a)(2)(A) must be rejected. Plaintiff has failed to establish with the requisite quantum of proof of that all of the required elements set forth previously are present.

Debtors obtained services from plaintiff through the representation that he would be paid an agreed upon price upon completion of the work. Plaintiff reasonably relied upon the misrepresentation and suffered economic loss as a proximate result in that he was not paid in full for his services.

Plaintiff has failed, however, to establish required elements (2) and (3) by a preponderance of the evidence. He has failed to establish that debtors knew on October 18, 1990 that plaintiff would not be paid as promised (or were reckless in so promising) and has failed to establish that they intended to deceive him when they so promised. While it *may* be the case that debtors had no intention at that time of ever paying him and that debtors intended to deceive him, plaintiff has not established by a prepon-

derance of the evidence that such indeed was the case.

The exact basis upon which plaintiff relies for his action is not clear. Plaintiff cites to various circumstances which, he insists, establish these elements. He asserts that debtors already were heavily in debt as of October 18, 1990 and knew (or should have known) at that time that they would be unable to pay plaintiff because they already planned to hire another general contractor to complete the job.

■ Neither of these circumstances establishes elements (2) and (3). Mr. Kenyon was not hired until late-October of 1990, approximately ten (10) days *after* plaintiff had been re-hired. Only $9,979.00 of the $66,528.00 available to pay contractors had been disbursed when plaintiff was re-hired on October 18, 1990. Approximately $55,-000.00 remained from the second, third, and fourth draws with which to pay Kenyon and suppliers. Plaintiff has not shown that defendants knew (or should have known), as of October 18, 1990, that there would not be funds left over with which to pay plaintiff.[2]

*B. Purchases From Leggett and Wallman.*

In order to challenge the dischargeability of a debt pursuant to section 523(a)(2)(A), "the creditor to whom such debt is owed" must request exception of that debt from discharge. *See* 11 U.S.C. § 523(c)(1).

"Creditor" is defined as an entity having a claim against the debtor that arose at or before entry of the order for relief or a specified type of claim against the bankruptcy estate. *See* 11 U.S.C. § 101(10).

"Claim" is defined as a right to payment or to an equitable remedy for breach of performance if the breach gives rise to a right to payment. *See* 11 U.S.C. § 101(5).

■ In other words, only a party to whom a debt is owed under the Bankruptcy Code has standing to challenge the dis-

---

**2.** There is an additional reason why plaintiff's action must fail with respect to Mrs. Jarmul. There is no indication that Mrs. Jarmul was a party to any purported fraud. No evidence was

presented that Mrs. Jarmul made any misrepresentations to anyone in this case. All relevant representations were made by Mr. Jarmul.

chargeability of that debt. *See In re Cannon*, 741 F.2d 1139, 1141 (8th Cir.1984).

▇ To the extent that he is objecting to the dischargeability of debtors' purchasing of materials from Leggett and Wallman, plaintiff is not entitled to bring this action. Plaintiff is *not* the party to whom these particular debts are owed. They are owed to Leggett and Wallman, respectively. Although Mr. Jarmul charged the materials to plaintiff's accounts with Leggett and Wallman, he did so without plaintiff's permission. The right to receive payment resides in Leggett and Wallman, not in plaintiff. With reference to these purchases, plaintiff has no obligation to Leggett and Wallman.

▇ Moreover, even if he has standing to object, plaintiff's objection pursuant to section 523(a)(2)(A) to the dischargeability of the debt arising from debtors' purchasing of materials from Leggett and Wallman nonetheless must fail. Plaintiff has failed to establish all of the required elements enumerated previously.

The material misrepresentations made by debtors in obtaining property from Wallman and Leggett were not made to plaintiff. Moreover, plaintiff did not rely at all, let alone rely reasonably, upon such misrepresentations. Finally, plaintiff did not suffer damages as a proximate result of his reasonable reliance thereon.

Judgment will be entered in favor of debtors and against plaintiff only because he has failed to prove his case. The outcome must not be interpreted as signifying that the court approves of Mr. Jarmul's conduct. To the contrary, his conduct was not becoming for a man of his position. This court is constrained, however, to apply the law as it exists and is not free to disregard it in order to achieve what it considers to be a just result.

An appropriate order shall be entered.