**In re Paul SILBA, Debtor.**

**BURT BUILDING MATERIAL CORPORATION, Plaintiff,**

**v.**

**Paul SILBA, Defendant.**

Bankruptcy No. 888–81146–20. Adv. No. 889–0017–20.

United States Bankruptcy Court, E.D. New York, Westbury Division.

Aug. 3, 1994.

A. Pergament, Levine, Weinberg, Kaley & Pergament, P.C., Garden City, NY, Pryor & Mandelup, Mineolo, NY, for plaintiff.

George Nager, Mineola, NY, for defendant/debtor.

C. Steven Hackeling, Chapter 7 Trustee, Macco, Hackeling & Stern, Huntington, NY.

Stan Y. Yang, Office of the U.S. Trustee, Garden City, NY.

## DECISION, ORDER AND JUDGMENT

ROBERT JOHN HALL, Bankruptcy Judge.

## PRELIMINARY STATEMENT

The Court is called upon to determine [1] the debt of Paul Silba ("Debtor") to Burt Building Material Corporation ("Plaintiff") non-dischargeable pursuant to section 523(a)(4) of the title 11, United States Code ("Bankruptcy Code"), and Article 3–A of the New York Lien Law. For the reasons set forth below, the Court holds that Debtor defalcated funds within the meaning of section 523(a)(4), and therefore the debt is non-dischargeable. 11 U.S.C. § 523(a)(4) (1994).

## RELEVANT FACTUAL BACKGROUND

We make the following findings of fact from all papers filed with the Court.

As of the time of trial, Plaintiff was a retail lumber yard which was in the business of selling building materials. Debtor had been doing business as a general contractor under the name of Paradise Construction. On or about July 1, 1983, Plaintiff commenced business dealings with Debtor by supplying him with building materials. Debtor used the materials to remodel homes. Debtor had previously purchased materials on an open credit line, though by March 25, 1987, all materials were paid for in full.

Between April 2 and June 25 of 1987, Plaintiff again supplied materials to Debtor, which were purchased through Debtor's

---

1. The Court has jurisdiction over this case pursuant to sections 1334, 157(a) and 157(b)(1) of title 28, United States Code ("title 28") and the order of referral of matters to the bankruptcy judges by the United States District Court for the Eastern District of New York (Weinstein, C.J., 1986). This is a core proceeding pursuant to section 157(b)(2)(I) of title 28.

credit line. The materials were used to remodel five homes. Debtor received full payment from four homeowners. One homeowner still owes Debtor $250 as construction was never completed. The parties dispute whether Debtor paid Plaintiff for any of the materials.

On November 2, 1988, Debtor commenced the within case by the filing of a voluntary petition for bankruptcy relief under chapter 7 of the Bankruptcy Code. Debtor's petition lists Plaintiff as a creditor holding an unsecured, non-contingent, non-disputed, liquidated claim for $19,700 against Debtor's estate for the cost of materials sold and alleged to be unpaid. On February 6, 1989, Plaintiff filed the within Adversary Proceeding, seeking determination that Debtor's obligation is non-dischargeable as being one which derives from (i) a fraudulent act by Debtor, and/or (ii) Debtor's defalcation while acting in a fiduciary capacity. (Bankruptcy Code sections 523(a)(2)(A) and (4) are the statutory bases, and are discussed in the Legal Discussion below). Plaintiff's complaint alleges that the amount of its claim is $17,582.99.

The Court subsequently conducted a trial of the issues. The following additional facts were adduced.

Debtor testified that he had various telephone conversations with Mr. Jeffrey Marino ("Marino"), vice president of Plaintiff, between August and September of 1987. In those conversations, Debtor and Marino discussed the outstanding debt and a time for payment. Then, in October of 1987, Debtor and Marino signed a written agreement which provided that the balance of the debt was to be paid in full by "year's end." (Letter Agreement, dated October 23, 1987, between Debtor and Plaintiff; Plaintiff's Exhibit A.) Also, pursuant to this agreement, Debtor furnished Plaintiff a check for $3,582.81. Debtor's check was returned, however, for having been drawn on an account with insufficient funds. Debtor's testimony is that he instructed Marino to refrain from depositing the check for a certain time because he knew he did not have sufficient funds in his account. Marino denies ever having been told this by Debtor.

Marino testified that he then informed Debtor that he intended to file one or more mechanic's liens upon the homes built or improved by Debtor. A mechanic's lien would secure payment for the outstanding debt. But, Marino testified, Debtor dissuaded him from filing a mechanic's lien by his promises of imminent payment. Debtor's testimony is that he does not recall any such discussions, and Debtor denies either asking or encouraging Marino to refrain from filing any mechanic's lien.

## LEGAL DISCUSSION

■ As stated, Plaintiff's claim was scheduled by Debtor in his bankruptcy petition; however, a lower amount was demanded by Plaintiff in its complaint. Debtor did not demonstrate at trial that any part of the amount demanded by Plaintiff was satisfied or that such amount should be reduced. Accordingly, the Court finds that Plaintiff's claim is, as demanded, $17,582.99.

Plaintiff's complaint is pursuant to sections 523(a)(2)(A) and (a)(4) of the Bankruptcy Code. Section 523(a)(2)(A) excepts from an individual's discharge any debt incurred through false pretenses, a false representation or actual fraud; section 523(a)(4) excepts from discharge any debt arising out of a debtor's "fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. §§ 523(a)(2)(A), (a)(4) (1994).

Arguing pursuant to section 523(a)(2)(A), Plaintiff alleges that Debtor's obligation was incurred through fraud due to false representations which induced Plaintiff to waive the filing of a mechanic's lien and to forebear from instituting collection litigation against Debtor. Plaintiff alternatively complains under section 523(a)(4), asserting that Debtor was acting in a fiduciary capacity when he received payment from the homeowners, and that Debtor's failure to pay constituted a defalcation while acting in this capacity.

Debtor procedurally argues against the relief requested, asserting the statute of limitations as an affirmative defense. Substantively, Debtor disputes all Plaintiff's contentions that he committed fraud or that defalcation occurred while Debtor was acting in a fiduciary capacity.

## A. Debtor's Affirmative Defense of Statute of Limitations

In his answer, Debtor asserts that "the complaint ... is barred by the Statute of Limitations." (Plaintiff's Amended Answer ¶ 14.) Debtor is apparently attacking either the timeliness of Plaintiff's non-dischargeability complaint or the timeliness of Plaintiff's underlying allegation that Debtor diverted the assets of a statutory trust.

■ As to Plaintiff's non-dischargeability complaint, the Federal Rules of Bankruptcy Procedure provide the time within which this complaint must be filed. Fed.R.Bankr.P. 4007(a) (1994). A complaint to determine the dischargeability of a debt for fraud or defalcation must be filed not later than sixty days following the first date set for the meeting of creditors (held pursuant to section 341 of the Code). *Id.; see* 11 U.S.C. § 341(a) (1994). Plaintiff's Adversary Proceeding complaint was filed with the Court within this period; accordingly, it was timely filed.

■ We turn next to the timeliness of Plaintiff's underlying claim that Debtor diverted assets of a statutory trust. The statutory trust to which Plaintiff speaks is created by New York's Lien Law (and is substantively discussed further below). Though inarticulately, it appears Debtor intended to assert the statute of limitations as an affirmative defense to Plaintiff's action brought pursuant to New York's Lien Law. This argument is misplaced, however.

Plaintiff has asked the Court to determine the dischargeability of a debt; this is what we are empowered to do. As we discuss below, the New York Lien Law delineates certain funds received by an entity as the assets of a statutory trust. The beneficiaries of the statutory trust are certain persons who contribute to the improvement of real property in New York. The statute of limitations set forth in the Lien Law prescribes the period within which an action may be commenced by such beneficiaries to enforce that statutory trust. N.Y. LIEN LAW § 77(2) (McKinney 1994).

This Adversary Proceeding initiated by Plaintiff, however, is not an action by a beneficiary to enforce a statutory trust; it is an action by a creditor to have its claim determined non-dischargeable. Therefore, the Lien Law limitations period, which applies to actions to enforce statutory trusts, is inapplicable. We have not been asked to enforce a statutory trust. The limitations period is only justiciable before the Court that is asked to enforce Plaintiff's statutory trust claim.[2]

Debtor's request for dismissal pursuant to the statute of limitations is denied; the Court holds that Plaintiff's Adversary Proceeding is timely.

## B. Plaintiff's Allegation of Fraud

■ We turn next to that part of Plaintiff's complaint which is grounded in section 523(a)(2)(A). The Court finds that the pleading and logic are faulty.

Plaintiff alleges that the debt should be non-dischargeable for fraud because Debtor fraudulently induced Plaintiff to refrain from commencing collection litigation or from filing any mechanic's liens to secure its claims for payment. Section 523(a)(2)(A), however, excepts from discharge debts for money, property, services or credit, *to the extent obtained by* fraud, a false representation or false pretenses. 11 U.S.C. § 523(a)(2) (1994).

---

2. If in the instant case the Court determines the debt to be non-dischargeable, Plaintiff will be free to commence an action to enforce a statutory trust under the New York Lien Law. If the issue is properly raised, the New York state court in which Plaintiff's action is instituted may decide whether such action is timely. This is appropriate. Alternatively, if we determine the debt dischargeable, no action to enforce a trust under the Lien Law may be commenced and the limitations period will never reach a New York state court.

We note that the statute of limitations pertaining to a creditor's claim could properly be before the bankruptcy judge in a claim objection proceeding. (This might occur regardless of whether the creditor has also filed a complaint to have the claim determined non-dischargeable). In such situation, the creditor files a proof of claim seeking to realize some portion of the assets of a debtor's estate. 11 U.S.C. § 501 (1994); Fed.R.Bankr.P. 3001 (1994). Were the debtor to object to such proof of claim, *id.* § 502; Fed.R.Bankr.P. 3007 (1994), asserting that the claim itself is time-barred, the issue might be justiciable before the bankruptcy judge.

At bar, Debtor obtained property (building materials) from Plaintiff on credit, and at that point incurred a debt. Plaintiff does not allege that property was *obtained* through fraud, a contention that is statutorily required. *Id.*

Plaintiff's allegation, at best, is that its claim remained unsecured and unlitigated by virtue of Plaintiff's reliance upon allegedly fraudulent promises. Plaintiff fails to allege or demonstrate that Debtor *obtained* any money, property, services or credit through fraud. Plaintiff's complaint accordingly fails to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6) (1994); *Murphy v. Lancaster*, 960 F.2d 746, 748 (8th Cir.1992); *McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir.1991); *Cook v. Bates*, 92 F.R.D. 119, 122 (S.D.N.Y.1981). Therefore, this part of Plaintiff's complaint must be dismissed as a matter of law, for it is insufficient under the express language of section 523(a)(2)(A). 11 U.S.C. § 523(a)(2)(A) (1994).

We turn next to Plaintiff's assertion that Debtor defalcated statutory trust funds.

## C. Creation of a Statutory Trust Fund

■ Pursuant to Article 3–A of New York's Lien Law, the funds received by an owner or contractor for the construction or improvement of real property in New York constitute assets of a trust. N.Y. LIEN LAW §§ 70, 71 (McKinney 1994). The owner or contractor may only use trust assets for payment of the claims of those who perform labor and/or furnish materials which contribute to the improvement of the real property. *Id.* The beneficiaries of this statutory trust include subcontractors, architects, engineers, laborers, and materialpersons. *Id.* The statutory trustee is required to maintain books and records detailing the receipts and expenses of trust assets. *Id.* § 75(2). Failure to maintain requisite bookkeeping shall constitute "presumptive evidence that the trustee has applied or consented to the application of trust funds ... other than [for permitted] purposes." *Id.* § 75(4). Though assets of different trusts may be maintained in the same account, the trustee must keep proper records. *Id.* § 75(1).

■ In the instant case, Debtor admits that as contractor he received improvement funds from the homeowners. Debtor also admits that the materials he purchased from Plaintiff on credit were used in the improvement of the various homes. The Court holds that a statutory trust was created under the Lien Law once Debtor received improvement funds from the various homeowners (the "Trust"). Furthermore, when Plaintiff furnished materials, it became a statutory beneficiary. (This is not disputed). The Trust assets were not to be used other than to pay claims against the Trust made by trust beneficiaries. N.Y. LIEN LAW §§ 70, 71 (McKinney 1994).

## D. Dischargeability of Defalcation Debt

■ As previously held, Debtor owes Plaintiff $17,582.99 for materials supplied. Plaintiff seeks a determination that this amount is non-dischargeable under section 523(a)(4) of the Bankruptcy Code. 11 U.S.C. § 523(a)(4) (1994). By its plain language, the purpose of section 523(a)(4) is to render non-dischargeable any debt which arises from a debtor's defalcation while acting in a fiduciary capacity. *Id.; Jasel Bldg. Prods. Corp. v. Polidoro (In re Polidoro)*, 12 B.R. 867, 870 (Bankr.E.D.N.Y.1981). Obviously, in order to determine a debt non-dischargeable pursuant to this section, a court must find (1) that the debtor was acting in a fiduciary capacity, and (2) that the debt is for defalcation while acting in this capacity. 11 U.S.C. § 523(a)(4) (1994).

### 1. Trustee as a Fiduciary Under New York Lien Law

■ As discussed, upon the creation of a statutory trust under the New York Lien Law, the statutory trustee must account for the trust assets. N.Y. LIEN LAW §§ 72, 75 (McKinney 1994). The trustee may not divert the assets to non-trust uses and is entrusted to protect the assets for the benefit of trust beneficiaries. *Id.* §§ 71, 72. This is a trust relationship. *Id.; Jasel Bldg. Prods. Corp. v. Polidoro (In re Polidoro)*, 12 B.R.

867, 871 (Bankr.E.D.N.Y.1981);[3] *Frontier Excavating, Inc. v. Sovereign Constr. Co.,* 30 A.D.2d 487, 294 N.Y.S.2d 994, 997 (N.Y.App. Div.1968) (statutory trustee has duty of loyalty to beneficiaries). A person in such trust position should be held to a fiduciary standard of care and duty while accountable for trust assets. The fiduciary standard is that which most protects the statutory beneficiaries. *Eminon Acoustical Constr. Corp. v. Richkill Assocs., Inc.,* 89 Misc.2d 992, 392 N.Y.S.2d 1007, 1008 (N.Y.Sup.Ct.1977) (Lien Law creates fiduciary relationship between trustee and beneficiaries); *Ingalls Iron Works Co. v. Fehlhaber Corp.,* 337 F.Supp. 1085, 1089 (S.D.N.Y.1972) (Lien Law requires trustee to act as fiduciary manager of trust funds). No lesser standard amply serves the purpose of the Lien Law. *See, e.g., Cadin Constr. Corp. v. Adam Jay Assocs.,* 86 Misc.2d 407, 382 N.Y.S.2d 671, 672 (N.Y.Sup.Ct.1976) (purpose of Lien Law is to hold trustee accountable); *Ingalls,* 337 F.Supp. at 1089 (purpose of Lien Law is to safeguard beneficiaries).

 For this reason, the Court holds that upon creation of a statutory trust under the provisions of the New York Lien Law, the statutory trustee becomes a fiduciary to trust beneficiaries. We accordingly hold that a statutory trustee under the New York Lien Law acts in a fiduciary capacity within the meaning of Code section 523(a)(4). *E.g., Erie Materials, Inc. v. Oot (In re Oot),* 112 B.R. 497, 500 (Bankr.N.D.N.Y.1989); *Besroi Constr. Co. v. Kawczynski (In re Kawczynski),* 442 F.Supp. 413, 415 (W.D.N.Y.1977); *Jasel Bldg. Prods. Corp. v. Polidoro (In re Polidoro),* 12 B.R. 867, 871 (Bankr.E.D.N.Y. 1981); *see Clark and Rapuano, Inc. v. Morris Ketchum, Jr. & Assocs. (In re Morris Ketchum, Jr. & Assocs.),* 409 F.Supp. 743, 746 (S.D.N.Y.1975). Thus, when Debtor received payments from the homeowners and the Trust was created, he began acting in a fiduciary capacity as to Plaintiff. We turn next to whether Debtor committed defalcation while acting in this fiduciary capacity.

## 2. Defalcation Under Bankruptcy Code Section 523(a)(4)

The term "defalcation" itself is not defined within section 523(a)(4) of the Bankruptcy Code. The Second Circuit Court of Appeals has held that defalcation is more encompassing than the terms "misappropriation" or "embezzlement," which were also used in section 523(a)(4)'s predecessor. *Central Hanover Bk. & Tr. Co. v. Herbst,* 93 F.2d 510, 511 (2d Cir.1937).[4]

 Other cases under section 523(a)(4) have defined defalcation, for purposes of non-dischargeability, as any failure to produce funds entrusted to a fiduciary. *E.g., Quaif v. Johnson,* 4 F.3d 950, 955 (11th Cir.1993); *Moreno v. Ashworth (In re Moreno),* 892 F.2d 417, 421 (5th Cir.1990) (defalcation is willful neglect of duty, even if not accompanied by fraud or embezzlement); *Tom Lange Co. v. Stout (In re Stout),* 123 B.R. 412, 414 (Bankr.W.D.Okla.1990) (citing *Travelers Express Co. v. Niven (In re Niven),* 32 B.R. 354, 355 (Bankr.W.D.Okla.1983) (defalcation is "the failure of one who has received monies in trust to pay it over as he ought")). The mere failure to account for the funds held in trust constitutes defalcation. *E.g., Western Sur. Co. v. Dauterman (In re Dauterman),* 156 B.R. 976, 980 (Bankr. N.D.Ohio 1993); *Seiler v. Farley (In re Farley),* 156 B.R. 486, 493–94 (Bankr.W.D.Pa. 1993); *Kleppinger v. Kleppinger (In re Kleppinger),* 27 B.R. 530, 532 (Bankr.M.D.Pa. 1982). Defalcation may be found, therefore, even where there is no fraud, embezzlement, or willful misappropriation on the debtor/trustee's part. *Ranadive v. Grabau (In re Grabau),* 151 B.R. 235, 240 (Bankr.N.D.Cal.

---

**3.** *Jasel* notes that under the Lien Law, a trust relationship is created as soon as the contractor receives construction funds, whether or not a materialperson's claim has come into existence. *Jasel,* 12 B.R. at 870. *See* N.Y.Lien Law § 70(3).

**4.** In *Central Hanover,* the Second Circuit wrote: Colloquially perhaps the word, "defalcation," ordinarily implies some moral dereliction, but in this context it may have included innocent defaults, so as to include all fiduciaries who for any reason were short in their accounts.... Whatever was the original meaning of "defalcation," it must here have covered other defaults than deliberate malversations, else it added nothing to the [statutory] words, "fraud or embezzlement."

*Central Hanover,* 93 F.2d at 511.

1991), *aff'd in part, rev'd on other grounds*, 151 B.R. 227 (N.D.Cal.1993).

In accordance with this line of authority, the Court holds that "defalcation" consists of any failure to account for, or any diversion of, trust assets, other than for payment of claims of trust beneficiaries or for other permitted purposes. Good faith is not a defense. We note that this definition for purposes of section 523(a)(4) is also consistent with the New York Lien Law and the cases thereunder.[5] *E.g., American Blower Corp. v. James Talcott*, 18 Misc.2d 1031, 194 N.Y.S.2d 630, 639 (N.Y.Sup.Ct.1959) (defalcation under the Lien Law exists in general where there is any diversion of trust funds for any purpose other than payment of beneficiaries), *aff'd*, 11 A.D.2d 654, 203 N.Y.S.2d 1018 (N.Y.1960), *aff'd*, 10 N.Y.2d 282, 219 N.Y.S.2d 263, 176 N.E.2d 833 (1961); *see also Besroi Constr. Co. v. Kawczynski (In re Kawczynski)*, 442 F.Supp. 413, 415 (W.D.N.Y.1977); *People v. Rallo*, 46 A.D.2d 518, 363 N.Y.S.2d 851, 860 (N.Y.1975), *aff'd*, 39 N.Y.2d 217, 383 N.Y.S.2d 271, 347 N.E.2d 633 (1976) (good faith is no defense).

We now apply this test to Debtor in the case at bar. Any failure by Debtor to account for, or any impermissible diversion of, Trust assets, other than in satisfaction of beneficiaries' claims, constituted defalcation. The trial established that: Debtor did not maintain specific trust fund accounts upon receipt of funds from the homeowners; Debtor failed to account for his inability to satisfy Plaintiff's claim against the Trust; and Debtor did not maintain proper books and records of Trust assets. Debtor has failed to satisfy Plaintiff's claim without explanation; this constitutes defalcation. *Western Sur. Co. v. Dauterman (In re Dauterman)*, 156 B.R. 976, 980 (Bankr.N.D.Ohio 1993) (trustee's mere failure to account for funds constitutes defalcation); *accord Seiler v. Farley (In re Farley)*, 156 B.R. 486, 493–94 (Bankr. W.D.Pa.1993); *Kleppinger v. Kleppinger (In re Kleppinger)*, 27 B.R. 530, 532 (Bankr. M.D.Pa.1982).

The Court holds that Debtor has failed to account for funds within the Trust, and that his debt to Plaintiff derives from defalcation while acting in a fiduciary capacity. For all the reasons discussed, therefore, we hold that Debtor's obligation (plus interest) to Plaintiff is **NON–DISCHARGEABLE.**

**SO ORDERED, DECREED AND ADJUDGED.**

---

**5.** "Defalcation" is not defined within the New York Lien Law; a "diversion of trust assets" is defined, though, as "any transaction by which any trust asset is paid, transferred or applied for any purpose [with limited exceptions] ... before payment or discharge of all trust claims with respect to the trust." N.Y. LIEN LAW § 72(1) (McKinney 1994). In fact, failure to turn over trust funds within a specified period of time constitutes larceny. *Id.* § 79–a.