**In re Mark J. OOT, aka/dba Oot Carpentry & Remodeling and Kathleen Jean Oot, Debtors.**

**ERIE MATERIALS, INC., Plaintiff,**

v.

**Mark J. OOT aka/dba Oot Carpentry & Remodeling, Defendant.**

**Bankruptcy No. 88–00136.
Adv. No. 88–0046.**

United States Bankruptcy Court, N.D. New York.

Nov. 21, 1989.

Byrne, Costello & Pickard, P.C., Syracuse, N.Y., for plaintiff (Terry R. Pickard, of counsel).

Scott, Sardano & Pomeranz, Syracuse, N.Y., for defendant (Roger Scott, of counsel).

## MEMORANDUM–DECISION, FINDINGS OF FACT CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This adversary proceeding comes before the Court on Plaintiff Erie Materials, Inc.'s ("Erie") Complaint to Determine Dischargeability of certain debts associated with two separate contracts in the total amount of $6,217.75 allegedly incurred by Mark J. Oot d/b/a Oot Carpentry ("Debtor") prior to the filing of his voluntary petition pursuant to Chapter 7 of the Bankruptcy Code (11 U.S.C.A. §§ 101–1330) ("Code"). Nondischargeability of those debts is sought on the grounds of fraud or defalcation while acting as a fiduciary pursuant to Code § 523(a)(4). The Court conducted a trial in Utica, New York on October 27, 1988 in which a continuance was granted to Erie by an Order of this Court

in its Memorandum–Decision, *Erie Materials, Inc. v. Mark Oot, d/b/a/ Oot Carpentry and Remodeling (In re Oot)*, slip op. Case No. 88–00136, Adv.Pro.No. 88–0046 (April 14, 1989). The trial was resumed and concluded on June 1, 1989 in Utica, New York after which the Court reserved decision and allowed both parties the opportunity to submit memoranda of law.

## FACTS

Debtor had been the sole proprietor of a home improvement business in which he contracted for various jobs with home owners. As part of his regular course of business, Debtor purchased building materials and supplies on a "supply now—get paid later" basis from various suppliers including Erie.

On March 11, 1987 Debtor entered into a written contract with Luke and Dorothy Kubarek ("Kubarek") which required him to make certain improvements in their residence at 202 Kingsdown Drive, Liverpool, New York. The contract provided that Debtor would remove existing windows and replace them with two casement windows in the kitchen, a bow window in the dining room, and thirteen double hung windows in locations throughout the remainder of the house. Through the testimony of Erie's Treasurer, Michael Shorney, and Erie's invoices, Erie established that the identical items specified in the Kubarek contract were purchased from Erie and delivered to the Kubarek residence at the time that the work was performed. The invoices, dated May 27 and June 1 were signed by Debtor as having received the materials, and verify the total amount owing on the materials as $4,324.90.

At the hearing in Utica, New York on June 1, 1989, Mrs. Kubarek testified that she had paid Debtor, in installments, the amount of $10,200.00 pursuant to their contract. A receipt, signed by Debtor, stating that the Kubarek contract was paid in full as of June 4, 1987, was also admitted into evidence at the hearing. Plaintiff's Exhibit L. No evidence was presented by Erie regarding the second contract, the alleged Robinson contract, nor as to any money paid by Robinson for improvements to their residence.

On February 1, 1988, when Debtor filed a voluntary petition for relief pursuant to Chapter 7 of the Code, Erie had not received the $4,324.90 owed to it by Debtor for the materials and supplies provided to Debtor between May 27, 1987 and June 1, 1987 which were used for the Kubarek renovation.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over this adversary proceeding by virtue of 28 U.S.C. §§ 1334(b) and 157(a) (West 1979 & Supp. 1989). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(I) (West 1979 & Supp.1989) and Bankruptcy Code ("Code") § 523(a)(4).

## ARGUMENTS

Erie argues that the Debtor is indebted to Erie in the amount of $6,217.75 for materials supplied to Debtor for use on two separate contracts for real property improvements and work performed by Debtor for which he received payment. Erie claims that Article 3–A of the New York Lien Law (McKinney 1989) ("Lien Law") creates a separate trust for each contract consisting of payments received by a contractor for performance of the work to the extent that the materialman that supplied materials used on a particular contract was not reimbursed. The trust funds, Erie contends, are not part of the estate under Code § 541. The Debtor contractor, Erie claims, acts as the statutory trustee with a legal obligation to apply the funds to the payment of materialman Erie as beneficiary of the trust. Erie asserts that because Debtor received the funds but neither paid Erie nor kept records in accordance with the Lien Law, the debt to Erie is not dischargeable pursuant to Code § 523(a)(4).

Debtor maintains that actual diversion of funds must be proven. Debtor asserts that because there is no evidence of the disposition of the funds after receipt by Debtor and no proof as to whether the contract was profitable, reliance upon the mere non-

payment of Erie is insufficient to establish an exception to discharge under Code § 523(a)(4). Since Erie's claim is for substantially the entire amount of the Kubarek contract, Debtor contends, that "a contractor would be guilty of a criminal act every time he entered into an improvident contract" if laborers and other suppliers also had to be paid from insufficient contract revenues. Debtor further argues that since there was no evidence of other suppliers, there is "no basis in fact or law" which entitles Erie to all of the monies received by Debtor on the Kubarek contract.

### DISCUSSION

Pursuant to Code § 523(a)(4), a debt is nondischargeable if it is on account of "fraud or defalcation while acting in a fiduciary capacity ..." In keeping with the Code's "fresh start" principle, courts have consistently held that the word fiduciary as it relates to § 523 applies only to an express trust. *See In re Peters*, 90 B.R. 588, (Bankr.N.D.N.Y.1988) (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934)). This Court has already recognized that the provisions of Article 3–A of the New York Lien Law create such an express statutory trust. *See In re Gould*, 65 B.R. 87, 89 (Bankr.N.D.N.Y.1986). Under Code § 541(c)(2), a restriction on the transfer of a debtor's beneficial interest in a trust enforceable under state law is not part of the debtor's estate. *See In re Grosso*, 9 B.R. 815, 823 (Bankr.N.D.N.Y.1981). Thus, under Article 3–A the trust is created and the fiduciary duty attaches upon receipt of payment by the contractor.

■ If a fiduciary relationship is found to exist, the plaintiff must then establish that the debt arose through "fraud or defalcation while acting in [that] fiduciary capacity," in order for Code § 523(a)(4) exception to dischargeability to apply. While a finding of either fraud or defalcation satisfies Code § 523(a)(4), establishing fraud requires a showing, by clear and convincing evidence, of a positive intentional act involving moral turpitude. *In re*

*Peters, supra* 90 B.R. at 605. Alternatively, establishing defalcation requires a showing, by a preponderance of the evidence, of a failure of the fiduciary to account for money received in his fiduciary capacity even if through negligence. *Id.*

In the present case, Erie, as indicated by invoices admitted into evidence at the October 27, 1988 hearing, supplied to Debtor, on a "pay—later" basis, the supplies used in the renovation of the Kubarek home. This practice of "supply now-get paid later" has long been the industry norm between materialmen and contractors. Indeed, it was in response to this practice that the New York Legislature promulgated the present Lien Law so that funds paid by an owner would ultimately reach, materialmen and laborers. *See In re Gould, supra* 65 B.R. at 89 (quoting 1942 Report of Law Rev. Comm., pp. 298–300; N.Y.Legis.Doc.1942, No. 65(H), pp. 2830).

■ Debtor does not refute the fact that the testimony and documentary evidence shows that he, as contractor, received $10,200.00 in payment from Kubarek for the renovations performed at that residence. Receipt of those funds created the statutory trust and imposed a fiduciary duty on the Debtor. Moreover, under the Lien Law, Erie, as the materialman, was a beneficiary of that trust.

■ Having established that a trust fund existed with regard to the Kubarek contract and that Erie was a beneficiary of that fund, the final inquiry is whether the debt arose through fraud or defalcation. Erie offers no evidence regarding the actual diversion of the trust funds. Instead, it relies on the provision of § 75(4) of the Lien Law which states that "[f]ailure of the trustee to keep the books or records required ... shall be presumptive evidence that the trustee has applied ... trust funds actually received by him ... for purposes other than a purpose of the trust ..." The resulting statutory "presumption of diversion" has been attenuated by previous holdings of this Court to a permissible inference of diversion. *Peters, supra* 90 B.R. at 606 (citing *Grosso, supra* 9 B.R. at 826).

After being called as a witness at the dischargeability trial on October 27, 1988, Debtor was asked to identify certain ledger documents he had allegedly produced regarding income and expenditures on the Kubarek and Robinson contracts. Debtor invoked his Fifth Amendment privilege against self-incrimination and refused to identify the documents. The documents, as a result of Debtor's proper assertion of his constitutional privilege, were not admitted into evidence. Erie argues that the absence of these or any other documents which would appear to satisfy the Debtor's statutory duty under § 75(4) of the Lien Law to keep adequate records, triggers the aforementioned inference of diversion. This, however, poses the question of whether drawing a negative inference in this instance, in effect, impermissibly penalizes the Debtor for exercising his privilege against self-incrimination.

The Court finds that the inference of Debtor's diversion of trust funds can properly be drawn here. As set forth by the Court in *In re Oot, supra* slip op. at 13, an adverse inference is permitted where the debtor asserts his privilege on matters peculiarly within his knowledge and where there is independent evidence supporting the adverse fact being inferred. *See Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1557–58, 47 L.Ed.2d 810 (1976); *Machado v. Commanding Officer,* 860 F.2d 542, 544–45 (2d Cir.1988). Here, Erie's invoices, Plaintiff's Exhibits G and H, indicate materials corresponding to the contract that Debtor had entered into with Kubarek, Plaintiff's Exhibit K, were delivered to the Kubarek residence. Erie's witness, Shorney, testified as to the amount owed by the Debtor on the invoices being $4,324.90. Mrs. Kubarek testified that she paid Debtor $10,200.00 on her contract with Debtor and Debtor's own written receipt, Plaintiff's Exhibit L, acknowledges that he received that payment from Mrs. Kubarek on June 4, 1987. The information in the alleged ledger documents which was protected by Debtor's assertion of his Fifth Amendment privilege, here, is exclusively within the Debtor's knowledge, however, uncontroverted testimonial and documenta-

ry evidence exists independently of Debtor's alleged ledgers which warrant the inference of diversion. Thus, while the Debtor is permitted to assert his privilege as a protective shield, he is not also allowed to convert it into a sword to strike out an inference warranted by the circumstances here. *See United States v. Robinson,* 485 U.S. 25, 108 S.Ct. 864, 869, 99 L.Ed.2d 23 (1988).

The Debtor in the instant case has offered no proof to rebut the inference of diversion invoked by Erie. The Court must, therefore, agree with Erie's claim that the absence of Debtor's records required by § 75(4) of the Lien Law presumes that Debtor diverted funds belonging to the trust.

Additionally, in *Peters, supra,* the Court implicitly adopted the reasoning set forth in the seminal Second Circuit case defining defalcation, *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510 (2d Cir.1937) (J. Learned Hand). The *Central Hanover* court observed that defalcation extends to "innocent defaults, so as to include all fiduciaries who for any reason were short on their accounts" thereby also covering defaults other than those involving "deliberate malversations ... [or] misappropriation" by the debtor. Defalcation may be established even though debtor's failure to account for money he received while acting in a fiduciary capacity was through ignorance or negligence. *Id.* Debtor's argument that actual and intentional diversion of the trust funds must be shown in order to establish defalcation under Code § 523(a)(4) is, therefore, unfounded. Thus, the Debtor's "innocent default" while under a fiduciary duty to Erie may be sufficient, without more, to establish defalcation.

In the case at bar, the fact that Debtor obtained materials from Erie which he used in the renovation of the Kubarek residence and for which he received payment, has been clearly established. As noted earlier, it was receipt of these funds that established the trust, and Erie was a beneficiary of the trust as a materialman. Having failed to both keep the records required

under § 75(4) of the Lien Law and to make trust fund payments to Erie, constitute the Debtor's breach of duty and defalcation with regard to the debt attributed to the cost of the materials in the amount of $4,324.90.

Debtor also asserts that since Erie has not shown that it was the only party providing material or labor to the Kubarek contract, it should not be allowed to recover the entire amount due because the result would be a substantial depletion of the balance of funds in the trust. While not articulated as such, the Court will treat Debtor's assertion as an argument that Erie's claim should be brought in the form of a class action rather than by Erie as an individual claimant. Lien Law disputes under Article 3–A should initially be brought in a representative capacity on behalf of all the beneficiaries of a trust, however, the failure to do so is not necessarily fatal to a claimant's action. *See Scriven v. Maple Knoll Apts.,* 46 A.D.2d 210, 215, 361 N.Y. S.2d 730 (1974). Also, since New York Civil Procedure Law and Rules ("NYCPLR") § 901 and Federal Rules Civil Procedure ("FRCP") 23 are procedural in nature, this Court adheres to FRCP 23 under *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See Peters, supra* 90 B.R. at 594.

Under the stricter standards imposed by FRCP 23, even if begun as a class action, Erie's action would not be able to be maintained as such. FRCP 23(a) conjunctively imposes, *inter alia,* the so-called "numerosity" requirement that the class be "so numerous that joinder of all members is impracticable." In determining impracticability of joinder, the geographic location of potential plaintiffs is a key factor. *In re W.T. Grant Co.,* 24 B.R. 421, 425, n. 4 (Bankr.S.D.N.Y.1982). Also, while there is no absolute minimum requirement, case law overwhelmingly indicates that the class of potential plaintiffs here does not meet the numerosity requirement. *See id.* at 424 (33 members too small); *Ewh v. Monarch Wine Co., Inc.,* 73 F.R.D. 131, 133 (Bankr.E.D.N.Y.1977) (34 putative plaintiffs insufficient); *State Sec. Ins. Co. v. Frank B. Hall & Co., Inc.,* 95 F.R.D. 496, 498 (N.D.Illinois 1982) (40 possible plaintiffs uncertain); *Glover v. McMurray,* 361 F.Supp. 235, 463 (S.D.N.Y.1973) ("[F]ifteen to thirty cannot maintain a class action unless special circumstances make joinder of members impracticable.").

According to Debtor's list of creditors, which his counsel certified under penalty of perjury, there are at most, fifteen possible trust claimants, i.e., laborers and materialmen. There has also been no showing of impracticality of joinder of the potential plaintiffs. This does not reach the levels required for certification.

Furthermore, the Court assumes that all of the potential plaintiffs had formal notice of Debtor's bankruptcy filing. It is difficult to believe that there exist potential claimants with notice who have not yet taken measures to protect their interests. It is rather to be expected that an individual with a significant pecuniary interest in the Debtor's case is best situated to guard his or her interest. *In re Peters, supra* 90 B.R. at 595 (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 316, 70 S.Ct. 652, 658, 94 L.Ed. 865 (1950)).

The Court finds, therefore, that Erie is relieved of the procedural prerequisite of bringing its nondischargeability complaint in a representative capacity due to the factual circumstances here which preclude certification of the class action under FRCP 23. In light of this, to require Erie to amend its complaint to conform to the form of pleadings in a class action is pointless.

Based upon the foregoing, it is hereby ORDERED:

1. That Debtor's pre-petition debt to Erie in the sum of $4,324.90 on account of materials used in connection with the Kubarek contract is deemed nondischargeable;

2. That Debtor's alleged pre-petition debt to Erie in the sum of $1,892.85 on account of materials used in connection with the Robinson residence is deemed discharged.