**In re Michael L. HOGAN, Debtor.**

**GIARRUSSO BUILDING SUPPLIES, INC., Plaintiff,**

**v.**

**Michael L. HOGAN, Defendant.**

**Bankruptcy No. 93–61202.**
**Adv. No. 93–70124.**

United States Bankruptcy Court,
N.D. New York.

Feb. 16, 1995.

Munson Law Offices (Steven G. Munson, of counsel), Watertown, New York, for Giarrusso Bldg. Supplies, Inc.

Anthony Inserra, Watertown, New York, for Debtor.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

This adversary proceeding was commenced upon the complaint of Giarrusso Building Supplies, Inc. ("Plaintiff"), filed on July 26, 1993, against Michael L. Hogan, d/b/a Hogan Contracting and Remodeling, d/b/a Gold Star Sports ("Debtor"). In its complaint, Plaintiff objected to the discharge of the Debtor pursuant to § 727(a)(2), (3), (4) and (5) of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). At the commencement of the trial on December 14, 1994, the Plaintiff also requested the Court to allow it to amend its complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), incorporated by reference in Rule 7015 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P."), to include relief pursuant to Code § 523(a)(2)(A) and § 523(a)(4). The parties were afforded an opportunity to file memoranda of law, and the matter was submitted for decision on January 18, 1995.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1), (b)(2)(I) and (J).

### FACTS

Debtor started his construction business under the name "Hogan Contracting and Remodeling" sometime in 1986. The Debtor testified that he had one full-time employee from 1988–1992 and that he also hired subcontractors to assist with the remodeling projects, as well as with the building of a limited number of new homes. Sometime in the spring of 1992 the Debtor was introduced to Vincent Giarrusso ("Giarrusso"), Plaintiff's president, by Dominick D'Agata ("D'Agata"), a close friend of the Debtor's mother and a long-time acquaintance of Giarrusso. An account was opened with Giarrusso in the name of the Debtor to enable him to obtain building supplies for various construction projects on credit. In November 1992, the Debtor owed Giarrusso $23,945.69 on a remodeling project he had undertaken on McDonald Road in Onondaga Hill, New York ("McDonald Road Project"). According to Giarrusso's testimony, when he approached the Debtor and requested payment, he was informed by the Debtor that he had not as yet been paid. Giarrusso also testified that he had suggested filing a lien against the property to induce the owner to make payment. According to Giarrusso, the Debtor asked that no lien be filed and instead Giarrusso agreed to accept a confession of judgment ("Confession") from the Debtor. See Exhibit "A" of Giarrusso's Complaint. The Confession, sworn to by the Debtor on November 11, 1992, provided for two payments, the first in the amount of $11,000 was to be paid on November 18, 1992, and the second in the amount of $12,945.69 was to be paid on November 30, 1992. The Debtor denied that he told Giarrusso that he would pay him in full once he had received payment from the owner on the McDonald Road Project. The Debtor did acknowledge, however, that at the

time he confessed judgment, he had actually been paid in full on the McDonald Road Project. The Debtor testified that he had had overruns on the McDonald Road Project, but could not provide any records to substantiate the overruns.[1] He also testified that he had paid Giarrusso approximately $11,000 or $12,000 [2] and had intended to pay him the balance of the debt.

Sometime in 1992, the Debtor also began operating a silk screen printing business under the name "Gold Star Sports". The Debtor testified that D'Agata was a silent partner in the business, having invested approximately $50,000. It was the Debtor's testimony that GSS never realized any profits and actually was in business for only 4–5 months. When asked to account for the monies received from D'Agata, the Debtor testified that D'Agata had requested and received approximately $10,000 in June 1992. Approximately $10,000 had been paid as commissions to Robert Clark and Jeff Mesci for work they did printing shirts on behalf of GSS. In addition, the Debtor testified that $5,000 was paid to remodel the GSS store, $5,000 was paid in rent, approximately $1,000 was used to pay utilities and $12,000 to $13,000 was used to purchase equipment.

Giarrusso, in his complaint, alleges that the Debtor had made cash withdrawals from the GSS checking account totalling approximately $33,044 between March 1992 and December 1992. While the Debtor testified that he had written a number of checks out to "Cash" to cover the delivery of goods by UPS to GSS and had provided Giarrusso with invoices allegedly reflecting the deliveries, no evidence was offered in this regard. The Debtor also acknowledged having taken monies from the business to pay off certain personal loans totalling approximately $1,200 per month and to pay the mortgage on a "spec" home he had built in the amount of $900 per month.

The Debtor listed no construction equipment in his Petition, and he testified that he rented equipment as needed on the various construction projects. He did list certain items of equipment used in GSS' silk screen printing business and indicated that he had sold the equipment in October 1992. However, according to his testimony at trial, the equipment had actually been transferred to Mr. Zapalla ("Zapalla") to satisfy an obligation the Debtor owed in connection with excavation work done on a house built by the Debtor for his cousin in Mariner's Landing. Zapalla was described by the Debtor as a "good friend." While Zapalla had possession of the equipment, the Debtor testified that he retained beneficial use of it in Zapalla's building in connection with a silk screening print business recently started by the Debtor's wife.

## ARGUMENTS

In requesting an amendment to its complaint so as to include a request for a determination of the dischargeability of its debt pursuant to Code § 523(a)(2)(A) and § 523(a)(4), Plaintiff asserts that the narrative portion of its complaint sets forth the acts for which it seeks such relief even though the specific sections of the Code were not cited. For instance, with respect to Code § 523(a)(4), Plaintiff refers the Court to ¶ 3(b) of the complaint which states that Plaintiff believes that the Debtor acquired a beneficial interest in certain property "through the conversion to his own use of constructive trust funds derived from various construction projects ..." Furthermore, with respect to Code § 523(a)(2)(A), ¶ 3(e) of the complaint alleges that the Debtor "falsely informed the Plaintiff that this job had not been paid in full and that the Debtor's debt to the Plaintiff would be satisfied as soon as the bank released the balance of the con-

---

1. According to the Debtor, his construction business was run out of the store housing Gold Star Sports ("GSS"). Allegedly, the Debtor was denied access to his records by his landlord, Empire Management Company ("Empire"). It is unclear from the testimony when, with respect to the Debtor's filing of his Petition on April 19, 1993, the Debtor was refused access to the GSS premises. The Debtor did testify that neither he nor his attorney had made any effort to recover the records for either business.

2. At one point in the testimony, the Debtor indicated that he had paid Giarrusso $12,000. However, he later testified that "$12,000 and some odd dollars" was still owed, namely the second installment listed in the Confession.

struction loan." It is Plaintiff's contention that Giarrusso waived his right to file a lien on the McDonald Road property in reliance on the Debtor's statement to him and the offer to sign the Confession. Plaintiff argues that the Debtor cannot claim surprise or prejudice should the Court allow it to amend its pleadings.

The Plaintiff also alleges that at the time the Debtor agreed to confess judgment, the Debtor intended to file bankruptcy. Plaintiff makes further allegations that the Debtor has comingled funds which would have otherwise been available to creditors, including monies to be held in trust pursuant to Article 3–A of the New York Lien Law ("NYLL"). Plaintiff argues that the Debtor transferred property within one year of filing his Petition and committed other overt acts which were designed to obscure from his creditors the exact size and nature of the Debtor's estate.

Debtor opposes Plaintiff's motion to amend its complaint. Debtor argues that Plaintiff has had well over a year to amend its pleadings and that the Debtor will be prejudiced. Debtor contends that based on the Plaintiff's allegations pursuant to Code § 727, the Debtor focused on an examination of his assets and their valuation at the time the Petition was filed in preparing his defense in the adversary proceeding. In addition, Debtor argues that the Plaintiff has failed to meet its burden of proof in seeking to have the Debtor denied a discharge or to have the debt to the Plaintiff determined to be nondischargeable.

## DISCUSSION

 A complaint is intended to present the issues of the case in order that parties can focus their discovery efforts and present their cases intelligently. *Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir.1987), *cert. denied*, 485 U.S. 977, 108 S.Ct. 1271, 99 L.Ed.2d 483 (1988). A motion to amend a complaint should be made as soon as the need becomes apparent, and a request for such an amendment at or near the time of trial is to be examined with special scrutiny. *Id.* However, delay alone, without prejudice to the nonmovant, is not sufficient to deny the motion. *Id.*

At time of trial before any evidence had been presented by either party, Plaintiff made an oral motion to amend its complaint to include a cause of action based on Code § 523(a)(4) and § 523(a)(2)(A). In making its request, the Plaintiff gave no reason for having delayed approximately 17 months before seeking to amend its complaint. The Court notes that any argument the Plaintiff might have made suggesting that it was frustrated in its discovery efforts has no merit given the Plaintiff's failure to avail itself of the proper procedural mechanisms for obtaining discovery.[3]

 Federal courts are in agreement that amendments to pleadings are to be liberally granted absent prejudice to the nonmovant in order that each claim be decided "on its merits rather than on procedural niceties." *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir.1982) (citation omitted). This approach comports with Fed. R.Civ.P. 8(f), incorporated by reference in Fed.R.Bankr.P. 7008, which states that "[a]ll pleadings shall be so construed as to do substantial justice," judging them by their substance rather than by their form or label. *See In re Blewett*, 14 B.R. 840, 842 (9th Cir. BAP 1981). The Court must determine whether the complaint provided the Debtor

3. At the beginning of the trial, the Plaintiff made an oral motion to "dismiss the Debtor's Petition" based on his failure to comply with Plaintiff's request, dated May 27, 1994, for discovery pursuant to Fed.R.Bankr.P. 2004. Plaintiff not only had failed to seek Court approval in requesting that the Debtor appear for an examination and make certain documents available to the Plaintiff pursuant to Fed.R.Bankr.P. 2004, but the Court also pointed that in the context of an adversary proceeding, Fed.R.Bankr.P. 7026–7037, incorporating Fed.R.Civ.P. 26–37, and not Fed. R.Bankr.P. 2004, were the proper procedural

discovery available to the Plaintiff. Pursuant to General Order # 94–1, dated April 15, 1994, this Court has opted out of Fed.R.Civ.P. 26(a)(1), (2) and (3) insofar as it provides for mandatory disclosures where there has been no requests by a party. In this instance, the Debtor had no duty to provide items of discovery to the Plaintiff until Plaintiff had made a proper request. Accordingly, the Court declined to entertain the Plaintiff's oral motion, and it was at that point in the trial that the Plaintiff made its motion to amend its complaint.

with adequate notice of the nature of the Plaintiff's claim to allow him a fair opportunity to prepare a defense. *See generally In re Kelley*, 46 B.R. 63, 67 (Bankr.E.D.Va.1985).

In *Kelley* the plaintiff, prior to the pre-trial conference, sought to amend its complaint, which asserted a cause of action pursuant to Code § 727, to include a cause of action pursuant to Code § 523(a)(2)(A). Debtor argued that to permit the amendment would serve to circumvent the time limits set forth in Fed.R.Bankr.P. 4007 for filing a complaint objecting to the discharge of a particular debt. The court in *Kelley* found no merit to the argument given that the original complaint had been timely filed. *But see In re Ray*, 49 B.R. 545 (Bankr.D.Hawaii 1985) (Plaintiff's motion to amend its complaint, made towards the end of the trial after the debtor had moved for dismissal to add a cause of action pursuant to Code § 727, was denied. The court found that it would be tantamount to extending the time for filing a complaint objecting to discharge by over three years.) Given the very nature of the time constraints set forth in Fed.R.Bankr.P. 4007 for filing a complaint and the liberal approach to be taken in granting an amendment, the Court must focus on more than just the label the Plaintiff has used in setting forth its various causes of action.

■ In the matter *sub judice*, the Plaintiff made specific reference to various subsections of Code § 727 before setting forth the factual basis for its allegations. In so doing, Plaintiff stated that it believed that the Debtor acquired an interest in certain real property "through the conversion to his own use of constructive trust funds derived from various construction projects which should have been utilized first to pay the direct debts related to said projects." *See* ¶ 3(b) of the Complaint. Code § 523(a)(4) precludes the discharge of a debt for "fraud or defalcation while acting in a fiduciary capacity ..." This Court has previously held that the provisions of Article 3–A of the NYLL create an expressed statutory trust and that a fiduciary duty attaches upon receipt of payment by the contractor. *See In re Oot*, 112 B.R. 497, 500 (Bankr.N.D.N.Y.1989). The Court concludes

that the Plaintiff's complaint provided the Debtor with adequate notice of a cause of action based on Code § 523(a)(4), even though no specific reference to that particular section of the Code was made by the Plaintiff in its complaint. Debtor had a fair opportunity to present a defense to the allegations made in ¶ 3(b) of the complaint and is not prejudiced by this Court's granting of Plaintiff's motion to so amend its complaint.

■ Code § 523(a)(2)(A) provides that a debt "for money, property, services ... to the extent obtained by false pretenses, a false representation or actual fraud ..." is not to be discharged. Paragraph 3(e) of Plaintiff's complaint alleges that the Debtor "falsely informed the Plaintiff that this job [McDonald Road Project] had not been paid in full and that the Debtor's debt to the Plaintiff would be satisfied as soon as the bank released the balance of the construction loan."

Without deciding the merits of Plaintiff's cause of action pursuant to Code § 523(a)(2)(A), the Court finds that the Debtor received notice that Plaintiff was asserting that he had made certain misrepresentations to the Plaintiff. Code § 727 does not provide a basis for relief in the case where Debtor allegedly has made a false representation, unless made under oath as referenced in Code § 727(a)(4)(A). Such allegations do provide a basis for seeking relief pursuant to Code § 523(a)(2)(A), however. Therefore, the Court will also permit Plaintiff to amend its complaint to include a cause of action based on Code § 523(a)(2)(A).

■ The Court next examines the evidence presented at trial in support of Plaintiff's various causes of action. In seeking to have a debt deemed to be nondischargeable pursuant to Code § 523 or to have a debtor denied a discharge pursuant to Code § 727, the Plaintiff must establish the elements of each cause of action by a preponderance of the evidence. *In re Wolfson*, 139 B.R. 279, 285 (Bankr.S.D.N.Y.1992), *aff'd.* 152 B.R. 830 (S.D.N.Y.1993), citing *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Furthermore, exceptions to discharge are to be narrowly construed in favor

of a debtor and against the creditor to effectuate the fresh start purposes of the bankruptcy laws. *In re Verdon,* 95 B.R. 877, 882 (Bankr.N.D.N.Y.1989) (citations omitted).

### Code § 523(a)(2)(A) Cause of Action

■ The Debtor acknowledged that Plaintiff had furnished him with approximately $22,000 to $24,000 in building supplies to complete the McDonald Road Project. The Debtor also testified that at the time he executed the Confession, he had been paid in full by the owner as contractor on the project. However, it was Plaintiff's testimony that the Debtor had informed him that he [Debtor] had not as yet received full payment. Plaintiff further testified that in reliance on the Debtor's statement and his offer to execute the Confession, Plaintiff did not file a lien against the property to secure the payment of its claim.

Code § 523(a)(2)(A) excepts from discharge debts for money, property, services or credit "to the extent obtained by false pretenses, a false representation, or actual fraud ..." Debtor has admitted to having obtained property from Plaintiff on credit. However, there have been no allegations that the Debtor obtained the building supplies through fraud or misrepresentation. Accordingly, Plaintiff's complaint to the extent that it asserts a cause of action pursuant to Code § 523(a)(2)(A) fails to state a claim upon which relief may be granted. *See In re Silba,* 170 B.R. 195, 200 (Bankr.E.D.N.Y. 1994). Therefore, that portion of Plaintiff's complaint must be dismissed as a matter of law.

### Code § 523(a)(4) Cause of Action

■ To hold a debt nondischargeable under Code § 523(a)(4), the creditor must show, (1) that an express trust was created; (2) that the debt was caused by fraud or defalcation, and (3) that the debtor was acting as a fiduciary to the creditor at the time the debt was created. *In re Billings,* 146 B.R. 431, 438 n. 5 (Bankr.N.D.Ill.1992).

■ The New York Legislature promulgated the present Lien Law so that funds paid by an owner would ultimately reach materialmen and laborers. *Oot, supra,* 112

B.R. at 500, citing *In re Gould,* 65 B.R. 87, 89 (Bankr.N.D.N.Y.1986) (quoting 1942 Report of Law.Rev.Comm., pp. 298–300; N.Y.Legis.Doc.1942, No. 65(H), p. 2830). Funds received by a contractor in payment for improvements to real property constitute assets of a trust. *Silba, supra,* 170 B.R. at 200 (citing NYLL § 70 and § 71). A fiduciary duty attaches upon receipt of payment by the contractor. *Id.* at 201; *see also Oot, supra,* 112 B.R. at 500. As statutory trustee, a contractor is required to maintain books and records detailing the receipts and expenses of the trust assets. *See* NYLL § 75(2). Any monies held in the trust are to be applied first to the payment of the statutory beneficiaries, namely subcontractors, laborers and materialmen on the project. *In re Dunwell Heating & Air Conditioning Contractors Corp.,* 78 B.R. 667, 671 (Bankr.E.D.N.Y. 1987). The contractor is entitled only to that which remains after the claims of the beneficiaries have been satisfied. *Id.* (citing *Aquilino v. United States,* 10 N.Y.2d 271, 280, 282, 219 N.Y.S.2d 254, 261, 262–63, 176 N.E.2d 826, 832 (1961)). There is no requirement that the beneficiaries file a notice of lien in order to enforce their interest in the trust. *See Aquilino,* 10 N.Y.2d at 277, 219 N.Y.S.2d at 259, 176 N.E.2d at 829.

In the matter *sub judice,* once the Debtor received payment from the owner on the McDonald Road Project, a trust was created with the Debtor acting as trustee, and the Plaintiff, as a supplier of building materials on the project, became a beneficiary of said trust. Plaintiff testified that he had received approximately $11,000 from the Debtor on or about November 18, 1992. He also testified that there remained an outstanding balance of $12,945.69. The question then arises whether the balance of the monies owing for the supplies is a nondischargeable debt arising from the Debtor's alleged fraud or defalcation while acting in a fiduciary capacity.

■ The Bankruptcy Code does not define "defalcation." This Court adopts the definition recently applied by the bankruptcy court in *Silba* that "'defalcation' consists of any failure to account for, or any diversion of, trust assets, other than for payment of claims of trust beneficiaries or for other per-

mitted purposes." *Silba, supra,* 170 B.R. at 202. Under this definition, there need be no showing of fraud, embezzlement or willful misappropriation on the part of the debtor/trustee. It is sufficient that the debtor/trustee failed to pay over the monies to the beneficiaries.

■ In the instant case, Debtor admitted that he was paid in full by the owner on the McDonald Road Project. As a supplier of building materials on the project, Plaintiff was entitled to payment in full. In executing the Confession, the Debtor acknowledged that $23,945.69 was owing to the Plaintiff and that he had only made partial payment on the debt in November 1992. Plaintiff alleged in its complaint that the trust monies had been converted by the Debtor to his own use. Debtor denied this allegation and testified that he encountered overruns on the McDonald Road Project which precluded him from paying the Plaintiff in full. However, Debtor failed to account for the actual distribution of the funds held in the trust. This Court has previously held that in the absence of a debtor's records as required by NYLL § 75(4), it is presumed that the debtor diverted funds belonging to the trust. *See Oot,* 112 B.R. at 501. The Debtor testified that the monies from the McDonald Road Project were deposited with Hogan Contracting and that the records which would establish the disbursement of the funds were in the possession of his former landlord and not accessible to the Debtor as a result of his having defaulted on his lease with Empire. Yet, the Debtor testified that neither he nor his attorney had made any efforts to obtain the records. In light of these facts, the Court concludes that the Debtor has failed to account for the funds held in trust by him and that his debt to Plaintiff derives from defalcation while acting in a fiduciary capacity.

*Code § 727(a)(2) Cause of Action*

■ To succeed on a cause of action based on Code § 727(a)(2), a plaintiff must establish that (1) the act complained of was done at a time subsequent to one year before the date of filing of the petition; (2) the act was done with actual intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code; (3) the act was that of the debtor or his/her duly authorized agent; and (4) the act consisted of transferring, removing, destroying or concealing the debtor's property, or permitting any of these acts to be done. *In re Berman,* 100 B.R. 640, 646 (Bankr.E.D.N.Y.1989), citing 4 COLLIER ON BANKRUPTCY, § 727.02 at 727–10 (15th ed. 1988). With respect to the second element requiring that there be "actual intent," the requisite intent may be inferred from the circumstances surrounding the alleged fraudulent act, including timing of events and the purpose for the conduct. *Id.; see generally In re Kaiser,* 722 F.2d 1574, 1582 (2d Cir.1983).

■ The Debtor filed his Petition on April 19, 1993. In the Statement of Financial Affairs, the Debtor indicated that he had sold certain items of equipment used in GSS in August 1992, for $4,000. The Debtor testified that the equipment had actually been transferred to Zapalla to whom he owed monies for having done some repair excavation work on a house built by the Debtor. According to the Plaintiff's complaint, the Debtor had admitted to the actual nature of the transfer at the § 341 meeting of creditors as well. *See* ¶ 3(a) of the Complaint. Debtor acknowledged having the beneficial use of the equipment which was now located in Zapalla's building.

Plaintiff also alleges in its complaint that there had been numerous withdrawals from the GSS checking account, made payable to cash, between March 1992 and December 1992. While Plaintiff makes reference to an actual inspection of the records to support its claim, no records were admitted into evidence. The Debtor did testify that as a newly established business he had had to pay United Parcel Service in cash in order to receive merchandise. The Debtor also testified that he had withdrawn monies from the GSS account to pay certain personal loans and a mortgage on a "spec" home he had built. Nowhere in the testimony is there any indication of the dates when these alleged transfers occurred which would provide the Court with some basis of determining their

relevance to a cause of action pursuant to Code § 727(a)(2).

While some of the transfers, including that of the equipment to Zapalla, may have occurred within one year of the Debtor having filed his Petition, the Plaintiff has also failed to establish that the transfers were made with an intent to hinder, delay or defraud any creditors. Therefore, the Court concludes that that portion of Plaintiff's complaint alleging a cause of action based on Code § 727(a)(2) must be dismissed.

*Code § 727(a)(3) Cause of Action*

 With respect to a cause of action based on Code § 727(a)(3), a creditor must show (1) that the debtor failed to maintain and preserve adequate records and (2) that such failure makes it impossible to ascertain the debtor's financial condition. *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir. 1992). Unlike a cause of action pursuant to Code § 727(a)(2), it is not necessary for a plaintiff to establish an *intent* to conceal information. *In re Pimpinella*, 133 B.R. 694, 697 (Bankr.E.D.N.Y.1991). Nor does the Code require a debtor to maintain an impeccable system of bookkeeping. *Meridian, supra*, 958 F.2d at 1230. The test is whether " 'there [is] available written evidence made and preserved from which the present financial condition of the bankruptcy, and his business transactions for a reasonable period in the past, may be ascertained.' " *Id.*, quoting *In re Decker*, 595 F.2d 185, 187 (3d Cir.1979). The adequacy of a debtor's books and records is to be evaluated on a case-by-case basis. *Pimpinella, supra*, 133 B.R. at 698, citing *In re Underhill*, 82 F.2d 258, 259–60 (2d Cir.), *cert. denied*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936).

 Plaintiff alleges that certain check stubs are available which show that the Debtor made numerous withdrawals from an account made payable to "Cash" and that the Debtor's records appear incomplete and "fabricated for the specific purpose of misleading the creditors . . ." *See* ¶ 3(c) of the Complaint. What documents the Plaintiff may have had were not submitted to the Court for admission into evidence. Furthermore, having failed to properly seek discovery of documents that might have been available from

the Debtor, Plaintiff has provided the Court with no evidence from which the Court might make a determination of the adequacy of the Debtor's books and records. Accordingly, that portion of Plaintiff's complaint alleging a cause of action based on Code § 727(a)(3) must also be dismissed.

*Code § 727(a)(4) Cause of Action*

Plaintiff alleges that the Debtor made a false oath by "failing to reveal the aforementioned transfers of properties and assets as well as the construction of illusory debts to conceal assets in the Statement of Financial Affairs." *See* ¶ 4 of the Complaint. While not specified, the Court deems the Plaintiff's cause of action to be one based on Code § 727(a)(4)(A).

 In order to establish a basis for the Debtor's discharge pursuant to Code § 727(a)(4)(A), the Plaintiff must establish that (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Emery*, 170 B.R. 777, 783 (Bankr.E.D.N.Y.1994) (citations omitted). In the context of a bankruptcy case, a false oath sufficient to justify the denial of discharge may include "(1) a false statement or omission in the Debtor's schedules or (2) a false statement by the debtor at an examination during the course of the proceedings." *Matter of Beaubouef*, 966 F.2d 174, 178 (5th Cir.1992) (citing 4 COLLIER ON BANKRUPTCY, § 727.04[1] at 727–59 (15th ed. 1992).

 As noted earlier, the Plaintiff has the burden of establishing each element of a cause of action by a preponderance of the evidence. A review of the evidence convinces the Court that the Plaintiff has failed to meet its burden with respect to Code § 727(a)(4)(A). The Plaintiff has made general allegations in its complaint, but has failed to support them with actual proof. The only statement that Plaintiff has established to be false was with respect to the Debtor having transferred, rather than sold as set forth in the Statement of Financial

Affairs, certain equipment to Zapalla in payment of an alleged debt. To sustain an objection under Code § 727(a)(4)(A), the Debtor must have willfully made the false statement with intent to defraud his creditors. *In re Bodenstein*, 168 B.R. 23, 32 (Bankr.E.D.N.Y.1994). In this case, the transfer was listed in the Debtor's schedules. There is nothing to indicate that there was any intent to defraud the creditors. Indeed, the fact that the transfer was listed in the Petition served as a basis for clarification of the nature of the transaction when the Debtor was questioned at the § 341 meeting of creditors. Furthermore, the Plaintiff has not convinced the Court that the statement itself related materially to the bankruptcy case so as to warrant a denial of the Debtor's discharge. For these reasons, that portion of the complaint alleging a cause of action based on Code § 727(a)(4)(A) is dismissed.

*Code § 727(a)(5) Cause of Action*

▮▮▮▮▮ Plaintiff's final cause of action is one based on Code § 727(a)(5). The Debtor's discharge may be denied if the Plaintiff is able to establish that "the debtor has failed to explain satisfactorily ... any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). There is no requirement that the Plaintiff establish fraudulent intent on the part of the Debtor. *See Bodenstein, supra*, 168 B.R. at 33 (citation omitted). The Plaintiff must simply establish that the Debtor failed to list assets which were in his possession prior to the time the case was commenced. *Id.* The Debtor then has the burden of convincing the Court that he has not hidden or improperly shielded the assets. *Id.*

▮▮▮ Plaintiff alleges in its complaint that the Debtor "failed to disclose the existence of computer, photographic and screening equipment acquired for the Gold Star Sports enterprise." As discussed previously, the photographic and screening equipment were not in the possession of the Debtor at the time he filed his Petition, but had been transferred to Zapalla several months earlier. While there is no computer listed in the Debtor's Petition, a review of the testimony given at the trial provides no further information that would indicate the existence or location of any computer.

Plaintiff also elicited testimony from the Debtor concerning the disposition of $50,000 received from D'Agata sometime in 1992. The Debtor explained that $10,000 was returned to D'Agata, $10,000 was paid as commissions to Clark and Mesci, $5,000 was spent remodeling the premises occupied by GSS, $5,000 was used to pay rent, $1,000 was used to pay utilities and approximately $12,000 to $13,000 was used to purchase equipment. Debtor testified that any monies received from the sale of merchandise were used to purchase additional inventory and to cover such expenses as rent and insurance. At the time GSS closed, the Debtor testified that other than a few trophies and racks, which were listed in his Petition, there was no merchandise left.

The Court finds the Debtor's explanation satisfactory in accounting for these various assets. Accordingly, the Court concludes that the portion of the Plaintiff's complaint alleging a cause of action based on Code § 727(a)(5) must also be dismissed.

For the reasons stated above, it is

ORDERED that the Plaintiff's complaint be amended to include a cause of action based on Code § 523(a)(2)(A) as well as a cause of action based on Code § 523(a)(4); it is further

ORDERED that the Plaintiff's complaint insofar as it seeks nondischargeability of the debt claimed to be owing to the Plaintiff pursuant to Code § 523(a)(2)(A) is dismissed; it is further

ORDERED that pursuant to Code § 523(a)(4), the debt claimed to be owing to the Plaintiff in the amount of $12,945.69, plus interest, is determined to be nondischargeable; and it is further

ORDERED that Plaintiff's complaint insofar as it seeks to have the discharge of the Debtor denied pursuant to Code §§ 727(a)(2), (3), (4) and (5) is dismissed.