**In re Michael WASKEW, d/b/a Parker Development and Consultants, Debtor.**

**Sadie SEMILOF, Plaintiff,**

**v.**

**Michael WASKEW, Defendant.**

Bankruptcy No. 93–30042.
Adv. No. 93–7076.

United States Bankruptcy Court,
S.D. New York.

Dec. 29, 1995.

Schulte, Roth & Zabel, New York City by Jonathan Taylor and Mark Neporent, for plaintiff.

Law Offices of K.D. Rothman, Nanuet, New York by Thomas M. Smith, for debtor-defendant.

## DECISION ON DISCHARGEABILITY OF A FIDUCIARY DEBT UNDER 11 U.S.C. § 523(a)(4) AND NEW YORK LIEN LAW ARTICLE 3-A

JEREMIAH E. BERK, Bankruptcy Judge.

## I. INTRODUCTION

Sadie Semilof ("Semilof") commenced this adversary proceeding against Debtor Michael

Waskew ("Waskew"), d/b/a Parker Development and Consultants ("PDC"), a sole proprietorship, on July 19, 1993, seeking to declare as nondischargeable an indebtedness arising out of his sale and construction of a house for her. The issue presented is whether this debt, alleged to be in the sum of $34,579.56, should be declared nondischargeable as a defalcation by a fiduciary under section 523(a)(4) of the Bankruptcy Code. For the reasons stated herein, I am satisfied that it should be.[1]

## II. FACTS

Waskew operated a home construction business under the assumed name of PDC. On January 8, 1993, an involuntary Chapter 7 petition was filed against him and an order for relief was granted, unopposed, on February 1, 1993. Waskew resided at 33 Valentine Avenue, Kingston, New York. He had divided this property into three parcels, one for his personal use (still referred to as "33 Valentine Avenue"), and two parcels held for sale (which became "23 Ringtop Road" and "14–16 Ringtop Road"). In the fall of 1991, he agreed to sell the 23 Ringtop Road parcel to Semilof and build a house on it for her. On or about the time Waskew was constructing the Semilof residence, he improved his own parcel by building an addition onto his house and adding a pond to the grounds.

Semilof paid Waskew $20,000 on October 24, 1991 and an additional $19,900 on January 10, 1992 towards the purchase of the parcel of land. Two contracts were executed on January 21, 1992, one for the purchase of the land, (Ex. JX–3), and one for the construction of the residence. (Ex. JX–4.) Construction was to take place between January 1 and June 30, 1992. The total cost of the project was not to exceed $252,000. The sum of $40,000 was attributed to the land purchase, and $212,000 was attributed to the cost of construction of the house. Included in the construction cost was $15,000 for design fees and another $15,000 for construction management fees. Waskew deposited all monies received from Semilof into PDC's

checking account. Semilof paid Waskew $240,293.11 in fifteen installments as construction progressed, and also paid to the Internal Revenue Service ("IRS") on Waskew's behalf an additional $10,725.38. The payment to the IRS by Semilof was made in August 1992 to satisfy a tax lien filed against Waskew's property (including 23 Ringtop Road) for his nonpayment of taxes. Semilof received the deed to her parcel on July 1, 1992.

In addition to the deed and contracts of sale, evidence introduced at trial included various canceled checks drawn on PDC's account and records that were either kept during the period of construction or recreated thereafter. These records included the Semilof "site log book," a daily journal showing the tasks performed at the Semilof project, (Ex. JX–28), and a May 2, 1992 financial accounting for the project which Waskew prepared at Semilof's request (the "May 2 Accounting"). (Ex. JX–16.) The site log book was maintained by Waskew and updated daily. The May 2 Accounting was reconstructed from Waskew's memory and from a "damaged" computer disk containing PDC's accounting files.

Semilof contends that Waskew is unable to account for $34,579.56 of the funds she paid to him. She calculates this amount by subtracting $216,438.93, for which Waskew properly accounted, from the total amount she paid to him. She alleges that Waskew's failure to maintain proper records for these funds amounts to a defalcation by a fiduciary and is nondischargeable under section 523(a)(4) of the Bankruptcy Code.

## III. DISCUSSION

1. *11 U.S.C. § 523(a)(4)*

 Debts arising through "fraud or defalcation while acting in a fiduciary capacity" are not dischargeable in bankruptcy. 11 U.S.C. § 523(a)(4). To succeed on a claim under section 523(a)(4) of the Bankruptcy

---

1. Subject matter jurisdiction over this proceeding arises pursuant to 28 U.S.C. §§ 1334(b), 157(a) and the "Standing Order of Referral of Cases to Bankruptcy Judges of the Southern District of New York" dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

Code, a plaintiff must establish by a preponderance of the evidence that the debtor, while acting in a fiduciary capacity, committed a defalcation of the plaintiff's funds.

### 2. *Fiduciary Status in New York*

■ The federal definition of "fiduciary" controls, but state law determines whether a trust was created. *In re Bennett*, 970 F.2d 138, 143 (5th Cir.1992). Section 523(a)(4) applies only if the trust was created "pursuant to a statute, common law or a formal trust agreement." *Id.* at 142–43. Accordingly, if a trust is created under New York law, then a trust-related debt may be nondischargeable where the defalcation was committed by a fiduciary-debtor.

■ A trust created by the New York Lien Law creates an express statutory trust within the meaning of section 523(a)(4). *See Erie Materials, Inc. v. Oot (In re Oot)*, 112 B.R. 497, 500 (Bankr.N.D.N.Y.1989); *see also Besroi Constr. Corp. v. Kawczynski (In re Kawczynski)*, 442 F.Supp. 413, 417 (W.D.N.Y.1977). The New York Lien Law provides that "[a]dvances made by or on behalf of a vendee of real property to the owner under or pursuant to a contract of sale shall constitute assets of a trust...." *See* N.Y.Lien Law, Art. 3–A, § 71–a(2)(a) (McKinney 1993). This statute created a trust for the benefit of Semilof (as vendee) in which Waskew (as owner) was the trustee. A fiduciary duty arose upon receipt of the trust funds by Waskew.

■ Waskew received a total of $251,018.49 from Semilof for the purchase and construction of the house at 23 Ringtop Road. (Ex. Pl.–1); (Ex. JX–7 at 4.) He argues that $39,900.00 is not part of the trust corpus because he received it prior to the execution of the contracts for sale of the land and construction of the residence. Under the statute of frauds, codified in N.Y.Gen. Oblig.Law § 5–703(3) (McKinney 1989), a contract to devise real property is void unless evidenced by a writing signed by the party to be charged. According to Waskew, since there was no enforceable contract at the time he received the funds, Semilof was not a "vendee" within the meaning of N.Y.Lien Law, Article 3–A, section 71–a(2)(a), and did not acquire vendee status until the contracts for sale and construction were executed.

■ Although the contract to purchase the land may have been unenforceable when Semilof advanced the $39,900.00, a fiduciary obligation arose and a statutory trust was created when Semilof advanced the funds to Waskew. *See* N.Y.Lien Law, Art. 3–A, § 71–a(2)(a) (McKinney 1993). Waskew's fiduciary duties arose by virtue of the New York Lien Law, not the underlying contracts. A trustee's fiduciary duties exist independent of any contractual obligation. *Kawczynski*, 442 F.Supp. at 417.

Waskew also argues that the $10,752.38 Semilof paid directly to the IRS on his behalf should not be considered part of the trust. However, Waskew owed this amount to the IRS and Semilof paid it on his behalf to clear title to the land she was purchasing, giving him full credit for the $10,752.38 so paid. Under the circumstance, this payment must also be considered part of the statutory trust.

### 3. *Defalcation*

#### A. *Defalcation Defined*

■ "Defalcation" is defined as "any failure, innocent or otherwise, by a fiduciary to account for, or pay over, trust funds." *Peerless Ins. Co. v. Casey (In re Casey)*, 181 B.R. 763, 766 (Bankr.S.D.N.Y.1995); *see also Erie Materials, Inc. v. Oot (In re Oot)*, 112 B.R. 497, 501 (Bankr.N.D.N.Y.1989). Fiduciary defalcation extends to "innocent defaults, so as to include all fiduciaries who for any reason were short on their accounts." *Central Hanover Bank Co. v. Herbst*, 93 F.2d 510 (2d Cir.1937). Intentional diversion of trust proceeds need not be shown. Innocent failure to account will suffice. *In re Waters*, 20 B.R. 277, 280 (Bankr.W.D.Tex.1982).

#### B. *Proving Defalcation*

■ Under the New York Lien Law, once a fiduciary relationship is established, a contractor, as a fiduciary, is held to a high level of accuracy in keeping books and records. Article 3–A, Section 75 of the New York Lien Law requires, in part, that:

2. Every trustee shall keep ... records with respect to each trust.... [If funds] of separate trusts are deposited in the same bank account, [the trustee] shall keep a record of such account showing the allocation to each trust of the deposits therein and withdrawals therefrom.

\* \* \* \* \* \*

4. Failure of the trustee to keep the books or records required by this section shall be presumptive evidence that the trustee has applied or consented to the application of trust funds actually received by him as money or an instrument for the payment of money for purposes other than a purpose of the trust as specified in section seventy-one of this chapter.

N.Y.Lien L., Art. 3–A, § 75 (McKinney 1993).

New York courts have noted that the legislative intent behind this fiduciary record-keeping requirement is to insure that the contractor uses the corpus of the trust *only* to fund that project. *Teman Bros., Inc. v. New York Plumbers' Specialties Co., Inc.,* 109 Misc.2d 197, 444 N.Y.S.2d 337, 340–41 (Sup.Ct.1981). The purpose of the statute is "to see to it that the funds intended for construction of an improvement are in fact used only for that purpose...." *Id.* at 340; *accord American Blower Corp. v. James Talcott, Inc.,* 18 Misc.2d 1031, 194 N.Y.S.2d 630, 639 (Sup.Ct.1959) ("A use of trust funds for any purpose outside the trust constitutes a diversion of such funds and is one of 'the very evils the trust fund provisions (of the Lien Law) were designed to overcome.'") (citing 1959 Law Revision Commission Report, N.Y.Legis.Doc. No 65(F), p. 13).

C. *Statutory Presumption*

█ A trustee unable to account for use of trust funds is presumed to have used them improperly. "Failure of the trustee to keep the ... records required ... shall be presumptive evidence that the trustee has applied ... trust funds ... for purposes other than a purpose of the trust...." N.Y.Lien Law, Art. 3–A, § 75(4) (McKinney 1993); *see also Schwadron v. Freund,* 69 Misc.2d 342, 329 N.Y.S.2d 945, 950 (Sup.Ct.1972) ("A trustee's failure to keep the required records is presumptive evidence that the trustee had diverted or consented to a diversion of the trust funds...."); *Frontier Excavating, Inc. v. Sovereign Construction Co., Ltd.,* 30 A.D.2d 487, 294 N.Y.S.2d 994, 998 (1968).

Waskew admits that many of his records were either incomplete or erroneous, and that he maintained no contemporaneous record of payment of $10,406.99 of Semilof project expenses which he included in the May 2 Accounting. (R. at 140–147, 187.) He also admitted that he did not report to the IRS some of the income he now claims as proper expense items on the Semilof project. (R. at 170.) In particular, in the summer of 1992, Waskew reported to the IRS only $15,000 as design-fees income, but in his May 2 Accounting disclosed an additional $10,314.89 for Semilof design fees. (R. at 82–88.) Further, Waskew charged Semilof for the engineering expense involved in subdividing his property into three parcels and constructing the pond on his property, although he did not report that amount to the IRS as well.

At trial, Waskew stipulated that certain items were improperly included in his May 2 Accounting to Semilof. (R. at 99.) He also admitted that numerous employee hours billed to the Semilof project were erroneous, either because they were double-billed or because the work billed was actually performed on a different project. (R. at 109–112, 148–150, 160–164.) Waskew charged Semilof for work allegedly performed by day laborers, although there were no corresponding entries in the Semilof site log book. (R. at 130–133, 140–150, 157–162.) He also charged Semilof for building supplies that were not used in the construction of her house. (R. at 125–127, 248–254, 264–269, 303–305.)

Upon the evidence presented, Plaintiff has established that Waskew did not maintain proper records to account for $34,579.56 of trust funds as required by New York Lien Law, Article 3–A, Section 75(4). Failure to keep the proper books and records was presumptive evidence that Waskew applied the funds for purposes other than those allowed under the express statutory trust. *See* N.Y.Lien Law, Art. 3–A, § 75(4) (McKinney

1993); *see also Erie Materials v. Oot (In re Oot),* 112 B.R. 497, 501 (Bankr.N.D.N.Y.1989) (concluding N.Y.Lien Law allows court to infer diversion of trust corpus even if not proven). This presumption of defalcation may be rebutted upon a showing of proper expenditures by the debtor. *See Oot,* 112 B.R. at 501.

In attempting to show Semilof-related expenditures and rebut the presumption that he committed a defalcation of $34,579.56 of trust funds, Waskew presented various canceled checks drawn on PDC's checking account claiming they were for expenditures properly attributable to the Semilof project. Most of these checks were challenged by Semilof. The "memo" portion on many of the checks implied that they were for Semilof-related payments. However, Waskew admitted that some of these payments were not exclusively for the Semilof project and were incorrectly attributed to it. (R. at 253, 264–269.) For example, Waskew introduced PDC check no. 991 payable to Central Hudson Gas & Electric for utility charges. He first claimed that the entire amount was attributable to the Semilof project, but later conceded that the utility bill was for electricity used in constructing the addition to his own house and for his residential use as well. (R. at 303–05.) Waskew did not establish what portion of the electric bill was attributable to the Semilof project.

Further, Waskew attempted to attribute expenses for constructing the pond on his property to the Semilof project. Although the property where the pond is located was eventually conveyed to Semilof as part of Waskew's settlement with the IRS, the construction of the pond was not part of the Semilof project and took place before Semilof purchased that property and at a time when Waskew intended to retain the parcel. In addition, some of the alleged Semilof-project canceled checks do not have corresponding entries in the Semilof site log book. (R. at 274–276, 302–306.) Waskew failed to rebut the presumption that trust assets were improperly diverted.

### IV. CONCLUSION

The record in this case supports the conclusion that Waskew held $251,018.49 in trust for Semilof and was able to account properly for only $216,438.93 of those funds. Plaintiff Semilof established that Waskew was unable to account for $34,579.56 of the funds held in trust for her. It is presumed that those funds were not used for trust purposes. Waskew was unable to rebut this presumption. Waskew's debt of $34,579.56 to Semilof is therefore nondischargeable.

A separate Order shall issue in conformity herewith.